UNITED STATES of America, Appellee,

v.

·Ella SUMLIN, Appellant.

No. 89–1930EM.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 15, 1989.

Decided July 31, 1990.

Rehearing and Rehearing En Banc Denied Sept. 5, 1990.

David C. Howard, St. Louis, Mo., for appellant.

Dean Hoag, St. Louis, Mo., for appellee.

Before ARNOLD, FAGG, and MAGILL, Circuit Judges.

ARNOLD, Circuit Judge.

Ella Sumlin was convicted by a jury of having cocaine and intending to sell it, and of carrying a .38 revolver during her crime. This conviction came after her second trial; the first jury was unable to reach a verdict. She was sentenced to eight years in prison (three for possessing the drug and five for carrying the gun), and fined $20,000. Sumlin now appeals her conviction. She alleges two errors below: the District Court's[1] failure to suppress the cocaine used to convict her, and the sufficiency of all the evidence supporting her conviction.

We affirm her conviction. Sumlin's motion to suppress was rightly denied. The search that revealed this evidence was reasonable given the circumstances of stolen property described below. Furthermore, the jury's verdict is adequately supported by this record. The cocaine and the revolver were found in what the jury could have reasonably believed to be the appellant's purse.

This case arose from happenstance rather than investigation. Sumlin was robbed of her purse as she arrived home late one night. She retrieved a pistol from her car and shot several times at the fleeing robber. Officers of the Sikeston Department of Public Safety (the same individuals double as police and fire fighters) responded. Neighbors had reported the gun-shots. The officers didn't find Sumlin at her house. Neighbors who had already arrived on the scene directed them to Sumlin's convenience store a few blocks away. She had returned there after the robbery. Two officers took Sumlin's statement, including a description of her purse and its contents. All agree that she was cooperative, and that she told the police her purse contained $200 and a .38 revolver serial # P53569. The officers testified, and the jury apparently believed, that she also said her purse was blue. Sumlin maintains that her purse was black, and that she said so then.

The police returned to the crime scene after the interview. In the grassy alley immediately behind the appellant's house, they found an unzipped blue cloth purse. Various personal items were also found scattered about the alley. Officer Boyd testified that he looked inside the purse for identification to confirm Sumlin's ownership. Suppression Hearing Transcript (H.T.) 9, 19–20. One of the first things he found was a leather cigarette case. He opened it, relying on his experience that women often carry a driver's license or credit cards inside cigarette cases. H.T.19. Instead of any identification, he found a large quantity of small cellophane bags containing a fine white powdery substance. H.T.9–10. (The substance was later determined to be cocaine.) Continuing to look through the purse, he found a bank passbook for a savings account in the appellant's name. H.T.19. Digging further, he felt a revolver at the bottom of the bag. Trial Transcript (T.) I:129, 142–144. (The serial number on that pistol was later matched to the number on the appellant's stolen gun. T. I:129, 144.) When Sumlin returned to the scene, she saw the retrieved purse and denied that it was hers. She explained to the officers, as she says

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri. Judge Hungate adopted the reasoning and conclusions of Magistrate William S. Bahn's Review and Recommendation on Sumlin's motion to suppress.

she had told them earlier, that her purse was black. T. I:142.

■ The Magistrate denied the appellant's motion to suppress the cocaine. He held that Sumlin lacked standing to challenge the search because she denied owning the purse and, at any rate, it had been abandoned. Review and Recommendation 5. The District Court adopted and incorporated this analysis, while noting that "[t]he question also persists as to 'what is a reasonable expectation of privacy in a purse that has been stolen?'" No. 88–47CR(3), 2 (E.D.Mo. Aug. 15, 1988) (order denying defendant's motion to suppress). We express no view on the Magistrate's and District Court's analysis of this search under the rubric of standing. Rather, we address the "persist[ing]" question: assuming *arguendo* that the recovered purse was hers, was Mrs. Sumlin's reasonable expectation of privacy in her stolen purse violated by Officer Boyd's search? We do not believe so. We hold that Mrs. Sumlin's (assumed) expectation of privacy in her stolen purse was not violated by this intrusion.

Officer Boyd's actions were reasonable under the circumstances. A purse had been stolen. Thereafter, a purse had been found. It matched the description, as the officer remembered it, of the stolen purse. The location of the recovered purse also led the officers to believe they had found the missing purse. That belief needed to be confirmed. Contrary to the Magistrate's finding that the bank-book and the revolver were discovered before the cigarette case, "one of the first items [Officer Boyd] came to was a brown cigarette case...." T. I:129. Both the bank-book and the revolver were discovered only after the cigarette case had been opened. H.T. 19; T. I:143–144. Seeking identification, as Officer Boyd testified he was about, justifies this intrusion. Further, money and a gun were in the stolen purse. Attempting to locate these valuable contents also justifies the officer's search. Either of these legitimate governmental interests—identification and recovery of stolen property—outweighs Mrs. Sumlin's privacy interests in her stolen purse. Cf. *Illinois v. Lafayette*, 462

U.S. 640, 646, 103 S.Ct. 2605, 2609–10, 77 L.Ed.2d 65 (1983) (post-arrest inventory search of a handbag was reasonable based on a range of state interests, including verification of the identity of the person arrested).

■ The appellant next argues that the District Court erred in not granting her motion for acquittal at the close of the government's case. She argues that there is insufficient evidence supporting her conviction for possessing cocaine. (Mrs. Sumlin doesn't dispute that she carried the .38 pistol. The legal significance of that act, however, hinges on the jury's conclusion on the possession charge.)

The jury in this case was offered alternative stories to explain what happened to Mrs. Sumlin's purse. The defendant's story was that the contents of her stolen black bag somehow got mixed up with a cigarette case full of cocaine. There was extensive testimony from Sumlin's neighbors, who reached the scene before the police, that nothing was in the alley then—no purse (blue or black) and no scattering of personal items. T. II:72, 97. Two other witnesses also testified that the handgun was found on the ground near one side of the alley rather than in the blue purse. T. II:102, 120. And finally, Sumlin's daughter testified that her mother nearly always carried a black vinyl purse, unlike the blue one found in the alley. T. II:136–139. The implication, spelled out in the closing arguments, was that the cocaine was not hers. Either the robber left it (and the blue bag) behind in his haste, or the police planted the cocaine, and then found it, to "get" Mrs. Sumlin. T. II:187–189, 171–172. The jury was asked to acquit on either possibility.

The government offered a different explanation. The appellant's purse was stolen, and she described it and some of its contents to the police, never expecting to get it back. The man who robbed her didn't have time to realize what he had, and in a hail of bullets, left her purse and most of its contents in the alley. There the police found a purse matching the description they received and checked the contents

to confirm ownership. They inadvertently discovered nearly 60 grams of cocaine, packaged in small amounts as if for distribution. T. II:39. The officers also found items in the purse confirming Sumlin's ownership: the pistol she described to them and her bank-book. Scattered around the alley were more items connecting the appellant with the scene—a letter addressed to her and her husband, a key ring she later identified as her own, and a compact with her fingerprint on it. T. I:131–132, 170; II:18. When she returned to the alley and discovered the police had found the purse (and probably its contents), she changed her story. Her purse wasn't blue after all, it was black.

The jury accepted the government's story of what happened. There is evidence to support both versions. If one credits the defense witnesses, the blue purse and the cocaine seem to appear out of nowhere. If, however, one credits the investigating policemen, Sumlin's constructive possession of cocaine prepared for distribution is a reasonable inference. This case properly went to the jury. And viewing the evidence in the light most favorable to the government, we decline to disturb the jury's conclusions. *United States v. O'Connell,* 841 F.2d 1408, 1424 (8th Cir. 1988), *cert. denied,* 488 U.S. 1011, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989). This case is far from a successful sufficiency-of-the-evidence claim, where a "reasonable-minded jury *must* have entertained a reasonable doubt as to the government's proof of one essential element of the offense." *United States v. Noibi,* 780 F.2d 1419, 1421 (8th Cir.1986) (emphasis in original).

One final aspect of this case deserves mention. Throughout the record and briefs there is an undercurrent of racial conflict. The defendant is black. Her witnesses—her neighbors and relatives—are more than likely also black because they all live in the same predominantly black section of Sikeston, though we can't be certain from the record. Sumlin asserts in her brief that all the members of the Sikeston Public Safety Department are white, and that because of this difference in race, the officers are on less than friendly terms

with her and her family. Appellant's Brief 1–2. She notes that these circumstances are relevant to this case, and they are. But this is the kind of conflict whose impact on the case is best left to the jury. At Sumlin's request, voir dire was conducted on the impact of the defendant's race. No potential juror expressed any reservation regarding the ability to serve without a predisposition rooted in race. And though we cannot determine from the record the race of the jurors, we nonetheless put our faith in their impartiality and judgement.

The judgment of the District Court is affirmed.