Dawn GUDEMA, Plaintiff–Appellant,

v.

NASSAU COUNTY, Nassau County Police Department, Chief George Davis, officially and individually, Lieutenant Karen Ryan, officially and individually, and Lieutenant Donald Pospisil, officially and individually, Defendants–Appellees.

No. 97–9390.

United States Court of Appeals, Second Circuit.

Argued June 24, 1998.

Decided Dec. 21, 1998.

Edward McHugh, Jericho, New York, for Plaintiff–Appellant.

Gerald R. Podlesak, Deputy County Attorney of Nassau County, Mineola, New York (Owen B. Walsh, County Attorney of Nassau County, on the brief), for Defendants–Appellees.

Before: VAN GRAAFEILAND, KEARSE, and JACOBS, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Dawn Gudema appeals from a final judgment of the United States District Court for the Eastern District of New York, Leonard D. Wexler, *Judge*, granting judgment as a matter of law in favor of defendants County of Nassau ("County"), *et al.*, dismissing Gudema's action brought under 42 U.S.C. § 1983 (1994) asserting an unlawful search and seizure of her property and the suspension of her driver's license without due process. Before submitting the case to the jury, the district court dismissed Gudema's claims against certain defendants without objection, dismissed her claim against the County for lack of proof of a municipal policy, and ruled defendant George Davis liable to Gudema as a matter of law on her due process claim. After the jury returned a verdict awarding Gudema $1 in nominal damages plus $100 in punitive damages on that claim, however, the court eventually granted a motion by Davis for judgment as a matter of law dismissing that claim on the ground that his conduct was random and unauthorized and that Gudema had an adequate postdeprivation remedy. On appeal, Gudema principally seeks reinstatement of the jury's verdict against Davis and of her claims against the County, arguing (a) that defendants failed to plead and prove that she had an adequate postdeprivation remedy, and (b) that Davis held a high-ranking position in which he established municipal policy. For the reasons that follow, we affirm.

## I. BACKGROUND

At the times pertinent to this case, Gudema was a police officer employed by the Nassau County Police Department ("Nassau Police Department" or "Department"), assigned to the Department's 3rd precinct. Defendants Karen Ryan and Donald Pospisil were lieutenants in the Department, also assigned to the 3rd precinct. Davis was chief of the Department's Internal Affairs Unit ("IAU").

In May 1994, IAU was conducting an investigation into a reported incident of "menacing" by Gudema on May 8. The investigation had been prompted by a telephone call to IAU from one John Doxey, manager of the Gaslite Parlor, a topless bar in Suffolk County. According to Doxey, who said he had been harassed by Gudema in 1992 and had told her to stay off the premises, Gudema entered the Gaslite Parlor on May 8, 1994,

caused a disturbance, and threatened and assaulted him. Although Gudema initially denied having struck Doxey, she testified at the trial of the present case that the Suffolk County Police ("Suffolk Police" or "Suffolk") were summoned to the Gaslite Parlor on May 8 and questioned her; and in July 1996 she pleaded guilty to 'Departmental disciplinary charges of, *inter alia,* unlawfully entering and remaining in Doxey's place of business after he had told her to stay out, and striking Doxey on the arm with a beer bottle.

#### A. *The Events of May 14–16, 1994*

On Saturday, May 14, 1994, shortly after the IAU investigation had begun, the Department's 3rd precinct received a call from the Suffolk Police stating that Suffolk had in its possession a Nassau Police Department shield belonging to Gudema. Pospisil, the desk officer at that precinct, was aware of prior instances in which Gudema had lost Department property. Pospisil testified that the Suffolk Police sergeant with whom Pospisil spoke on May 14 stated that

> he was in possession of the shield since May 10 and attempts ha[d] been made to contact Officer Gudema. She was contacted between that time and this Saturday and she hadn't come to claim the shield.
>
> Knowing her disciplinary problems having dealt with her in the past, whereas I also had disciplined her for losing departmental property in the past and was aware of a second incident where she lost property, I felt it was justifiable for me, as a member of the police department, to safeguard that property since Officer Gudema had not done so on her own, being four days that that was laying there, that we had no idea that it was there.

(Trial Transcript October 1996· ("Tr."), at 160.) Accordingly, Pospisil sent Ryan to Suffolk County to retrieve the shield. He also contacted IAU. Davis, who was off-duty that day, instructed that Ryan was to call him when she returned from Suffolk County.

Ryan examined the property being held by the Suffolk Police and found it to consist of a shield case containing Gudema's New York State driver's license, along with other personal papers and photographs, and a duplicate of Gudema's police shield. Possession of a duplicate shield without the permission of the Department was a violation of the Department's internal regulations. Ryan gave Suffolk a receipt for the shield case and its contents, brought the property back to the Department, and reported by telephone to Davis.

On Davis's instructions, Ryan took the following steps. She summoned Gudema, retained the items received from Suffolk, and gave Gudema a voucher for the retained property; she confiscated Gudema's authentic shield, instructed her to change into civilian clothing, and warned her not to drive a car. Gudema requested the immediate return of her belongings; Ryan informed her that the decision as to their return would be made by Davis and that, in the meantime, Gudema would be provided with transportation to and from work.

Gudema's driver's license and her other papers were returned to her two days later, on Monday, May 16. The duplicate shield was not returned. The shield case was returned to her at or after the trial of this action in October 1996, having been retained by IAU in connection with the disciplinary proceedings against Gudema, which continued until Gudema's plea of guilty in July 1996 to all of the charges against her, including possession of an unauthorized duplicate shield.

#### B. *The Present Lawsuit and the District Court's Judgment*

Gudema commenced the present action in October 1994, alleging principally that defendants had unlawfully searched and seized her shield case and its contents and that Davis's instruction that Gudema not drive while the Department retained her license deprived her of her driving privileges without due process. The complaint sought, *inter alia,* $1 million in compensatory damages and $1 million in punitive damages.

Following a period of discovery, defendants moved for summary judgment, arguing that Davis's order did not deprive Gudema of due process because the Department had no power to suspend Gudema's driver's license or otherwise prevent her from driving, and administrative proceedings within the Department were available for the review of

alleged departmental violations of the rights of its officers. Defendants also argued that the retention of the shield case and its contents did not constitute a search or seizure within the meaning of the Fourth Amendment and that the complaint failed to allege any municipal policy or other basis for liability against the Department or the County. The district court denied the motion, and the case proceeded to trial.

During the trial, the district court dismissed Gudema's claims against Ryan and Pospisil after Gudema acknowledged that she did not object to those dismissals. In addition, the court dismissed all claims against the County on the ground that Davis's order that Gudema not drive did not reflect a municipal policy. As to the claims against Davis, the only remaining defendant, each side moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50. The court granted both motions in part. It granted Davis's motion to dismiss Gudema's search and seizure claim, concluding that Gudema's property had come into the Department's possession lawfully and that the extended retention of the shield case was justified in light of the ongoing investigation and disciplinary proceedings involving Gudema. The court granted part of Gudema's motion, however, with respect to Davis's order not to drive. The court stated that Davis's instruction had effectively suspended Gudema's driving privilege without due process and that she was entitled to a directed verdict with respect to liability on that claim. The court thus submitted the case to the jury solely on the issue of the damages to which Gudema was entitled from Davis for ordering her not to drive. The jury returned a verdict awarding Gudema nominal damages of $1, *nothing* in compensatory damages, and punitive damages of $100.

Following the verdict, Davis moved to set aside the award of punitive damages, and the court reserved decision. Before resolution of that motion and before the entry of judgment, this Court decided *Hellenic American Neighborhood Action Committee v. City of New York,* 101 F.3d 877 (2d Cir.1996) ("*Hellenic American* "), *cert. dismissed,* — U.S. ——, 118 S.Ct. 15, 138 L.Ed.2d 1048 (1997). Based in part on that decision, Davis again moved for judgment as a matter of law pur-

suant to Rule 50, requesting that the district court vacate the jury's award and dismiss Gudema's complaint against him in its entirety. After receiving briefs on the issue, the district court granted the motion. The court concluded that Davis's order was a random and unauthorized act for which Gudema had an adequate postdeprivation remedy and hence, under the principles reflected in *Hellenic American,* did not deny Gudema due process.

Judgment was entered dismissing the action, and this appeal followed.

## II. DISCUSSION

On appeal, Gudema contends principally (1) that the court erred in dismissing her claim that the warrantless search and seizure of her shield case, personal papers, and photographs, violated her rights under the Fourth Amendment, and (2) that the district court erred in dismissing her due process claim on the basis of *Hellenic American* because defendants had failed to plead that Gudema had an adequate postdeprivation remedy for the Department's retaining her driver's license and ordering her not to drive, and because in any event there was no such remedy. She asks that the jury's verdict and her claims against the County be reinstated. Although Gudema also requests that "all" of her claims be reinstated (Gudema brief on appeal at 33), she has not advanced any argument suggesting that the district court erred in dismissing her claims against Ryan and Pospisil, and at trial she informed the court that she had no objection to their dismissal. The dismissals as to Ryan and Pospisil are therefore affirmed without need for further discussion. We reject Gudema's contentions with respect to Davis and the County for the reasons that follow.

### A. *The Search and Seizure Claim*

■ The Fourth Amendment forbids "unreasonable searches and seizures" of a person's "papers[ ] and effects" and requires that any search warrant be supported by "probable cause." U.S. Const. amend. IV. "[A]lthough both the concept of probable cause and the requirement of a warrant bear on the reasonableness of a search, ... in

certain limited circumstances neither is required." *New Jersey v. T.L.O.*, 469 U.S. 325, 340, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (internal quotation marks omitted). The "underlying command of the Fourth Amendment is always that searches and seizures be reasonable," and "what is reasonable depends on the context within which a search takes place." *Id.* at 337, 105 S.Ct. 733.

 In the circumstances of the present case, several well-established principles are pertinent. First, the Fourth Amendment's prohibition against unreasonable searches is designed to protect an individual's reasonable expectation of privacy. *See, e.g., United States v. Salvucci*, 448 U.S. 83, 91–93, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). However, mere ownership of property does not establish a legitimate expectation of privacy unless the owner vigilantly protects the right to exclude others. *See, e.g., id.; United States v. Torres*, 949 F.2d 606, 608 (2d Cir.1991). Thus, even in the absence of a warrant and probable cause, a search of property that has been abandoned, for example, does not violate a privacy interest. *See, e.g., id.* (no expectation of privacy in shoulder bag where defendant disclaimed ownership of bag and knowledge of its contents); *United States v. Lee*, 916 F.2d 814, 818 (2d Cir.1990) (defendant's repeated statements disavowing ownership of suitcase constituted abandonment, thereby forfeiting any legitimate expectation of privacy); *cf. Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960) (no reasonable expectation of privacy in articles left in a hotel room after rental period has expired); *United States v. Rahme*, 813 F.2d 31, 34–35 (2d Cir.1987) (same). And although an owner retains some privacy interest in property that is merely lost or stolen, rather than intentionally abandoned, that interest is outweighed by the interest of law enforcement officials in identifying and returning such property to the owner. *See, e.g., United States v. Sumlin*, 909 F.2d 1218, 1220 (8th Cir.), *cert. denied*, 498 U.S. 1000, 111 S.Ct. 559, 112 L.Ed.2d 566 (1990).

 Second, when the authorities have come into possession of a container lawfully, it is reasonable, within the meaning of the Fourth Amendment, for them to conduct an inventory search of the container. *See, e.g., Colorado v. Bertine*, 479 U.S. 367, 371–72, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) (standard inventory search of property taken from a person lawfully arrested is permissible in order "to protect [the] property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger"). Lost property found by the police or found property turned over to the police is in the lawful possession of the police, *see, e.g.*, N.Y. Pers. Prop. Law § 253, subd. 1 (McKinney 1992) ("the police with whom found property . . . is deposited shall accept and retain custody of the property"), and the inventorying of such property is reasonable, *see, e.g., United States v. O'Bryant*, 775 F.2d 1528, 1534 (11th Cir.1985) (inventory-search exception to Fourth Amendment warrant requirement allows officer who finds "seemingly abandoned" container to "reasonably inspect that property to determine the identity of the owner and inventory the property's contents for safekeeping").

 Third, neither a warrant nor probable cause is required when a government entity conducts a reasonable search acting in its capacity as employer rather than law enforcer. *See, e.g., O'Connor v. Ortega*, 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987); *Sheppard v. Beerman*, 18 F.3d 147, 152 (2d Cir.), *cert. denied*, 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994); *United States v. Collins*, 349 F.2d 863, 867–68 (2d Cir.1965), *cert. denied*, 383 U.S. 960, 86 S.Ct. 1228, 16 L.Ed.2d 303 (1966). In *United States v. Collins*, for example, this Court upheld as constitutional a warrantless search by United States customs agents and postal inspectors of the work area and work-related belongings of an employee of the Customs Service's mail division in connection with the employee's alleged theft of a package from the mail division. *See* 349 F.2d at 868. Noting that the suspected misconduct was "[ ]connected with the performance of [the employee's] duties as a Customs employee," we concluded that the search of the employee's work area and work clothing was "a constitutional exercise of the power of the Government as [his] employer, to supervise and investigate the performance of his duties as a Customs employee." *Id.*

In *O'Connor v. Ortega*, the Supreme Court held that the usual requirements of a warrant and probable cause for government searches do not apply to a government's work-related investigation into the performance of its own employee. *See* 480 U.S. at 721–22, 724–25, 107 S.Ct. 1492 (plurality opinion). A four-Justice plurality concluded that "investigations of work-related misconduct[ ] should be judged by the standard of reasonableness under all the circumstances." *Id.* at 725–26, 107 S.Ct. 1492. A fifth Justice stated that he "would hold that government searches ... to investigate violations of workplace rules—searches of the sort that are regarded as reasonable and normal in the private-employer context—do not violate the Fourth Amendment." *Id.* at 732, 107 S.Ct. 1492 (Scalia, J., concurring in judgment).

■ These principles converge in the present case. There is no dispute that Gudema had lost her shield case sometime between May 8 and May 10; that the case contained what appeared to be a Nassau Police Department shield; that the Suffolk Police had lawful possession of the shield case on May 10; that Suffolk left word for Gudema at her home that it had the shield case at least as early as May 12; and that on May 14, Gudema having failed to retrieve the shield case, the Suffolk Police called the Nassau Police Department, which was Gudema's employer and the ostensible issuer of the shield, to inform the Department of those facts and to turn the property over to the Department. Pospisil received the information that Suffolk had had possession of Gudema's shield for four days despite its attempts to have her retrieve it, and he was well aware that Gudema had been disciplined in the past for failing to safeguard Department property. We conclude that as a matter of law it was reasonable for the Nassau Police Department, as Gudema's employer, to take possession of a shield case that contained either Department property or an unauthorized duplicate of its property, and which had been lost by its employee who failed, after receiving notice, to retrieve it.

Nor can there be any genuine dispute that it was reasonable for Ryan to search the shield case. An inventory of the contents was required both in order for Ryan to give Suffolk a receipt for the property it released to her and in order for her to give Gudema a voucher for the property the Department retained.

■ Finally, it was plainly reasonable for the Department as an employer investigating the misconduct charges leveled by Doxey, to retain the papers contained in the shield case for two days from Saturday until Monday, when Davis returned to duty and could have an assessment made as to whether they were relevant to the ongoing investigation of Gudema. The papers were returned to Gudema on that Monday. Nor was the longer detention of the shield case unreasonable. There is no dispute that Gudema had used the shield case to carry her unauthorized duplicate shield, and she testified that she displayed the shield case to the Suffolk Police officers when they questioned her on May 8 with respect to the disturbance at Doxey's bar. It was plainly reasonable for the Nassau Police Department to retain the shield case as relevant to the disciplinary proceedings against Gudema which arose out of that disturbance. Those proceedings were ongoing when the present suit was commenced in 1994, and they continued for some two years until July 1996. The present action thus presented no viable claim based on the Department's retention of the shield case.

■ Although the shield case was not returned to Gudema immediately upon the completion of the disciplinary proceedings, any claim that the retention of the case after July 1996 was unreasonable was not an issue in the present action but would have required the filing of a new suit or a supplemental complaint, *see* Fed.R.Civ.P. 15(d) (events occurring after commencement of action are to be raised by supplemental pleading). Only the 1994 retention of the shield case was at issue in the present action, and, for the reasons discussed above, that retention was reasonable.

In all the circumstances, the actions of the Nassau Police Department in receiving Gudema's shield case and its contents from the Suffolk Police and in inventorying those contents were reasonable as a matter of law, and no warrant was required. Gudema's claim of unlawful search and seizure was properly dismissed.

B. *The Due Process Claim*

Gudema contends that Davis's May 14 order that she not drive constituted, in effect, a "suspen[sion]" of her license (*e.g.*, Gudema brief on appeal at 16) without due process, and she argues that she was entitled to prevail on that claim (1) because defendants did not plead and prove that she had an adequate postdeprivation remedy and (2) because, in any event, no such remedy was available. We reject Gudema's first argument because the unavailability of an appropriate remedy is part of a due process plaintiff's claim and because the existence and adequacy of the remedies provided by state statutes is a question of law, not of fact. We reject her second argument because, as discussed below, New York law, to wit, Article 78 of N.Y. C.P.L.R. § 7801 *et seq.* (McKinney 1994), provided her such process as was due.

It is well established that many state-created privileges, such as a license to drive, "are not to be taken away without that procedural due process required by the Fourteenth Amendment." *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). Ordinarily, the Due Process Clause requires that the state not deprive an individual of a significant liberty or property interest without affording notice and some opportunity to be heard prior to the deprivation. *See, e.g., Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 299, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981); *Parratt v. Taylor*, 451 U.S. 527, 540, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). A deprivation of liberty or property through the conduct of a state employee whose acts are random and unauthorized, however, does not constitute a procedural due process violation so long as the state provides a meaningful remedy thereafter. *See, e.g., Zinermon v. Burch*, 494 U.S. 113, 130, 132, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

> When a deprivation occurs because of a random, arbitrary act by a state employee "[i]t is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place. The loss of property, although attributable to the State as action under 'color of law,' is ... almost ... [invariably] beyond the control of the State. Indeed, in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation."

*Hellenic American*, 101 F.3d at 880 (quoting *Hudson v. Palmer*, 468 U.S. at 532, 104 S.Ct. 3194). Where there is a meaningful postdeprivation remedy, there is no due process violation. *See, e.g., Hudson v. Palmer*, 468 U.S. at 531, 533, 104 S.Ct. 3194.

In *Hellenic American*, an appeal from the granting of a preliminary injunction in favor of the plaintiff, which had brought a § 1983 action challenging the defendant municipality's termination of the previously granted privilege of contracting with the municipality, we ruled that an Article 78 proceeding was adequate to provide the plaintiff with due process:

> "[A] petitioner in an Article 78 proceeding ... is permitted to submit ... affidavits and other written proof [of the[ ] claim], and where a triable issue of fact is raised, the petitioner may obtain a trial." *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 202 (2d Cir.1996). Additionally, constitutional issues can be decided in Article 78 proceedings. *Christ the King Reg. High Sch. v. Culvert*, 815 F.2d 219, 224–25 (2d Cir.1987).

*Hellenic American*, 101 F.3d at 881. Given the availability of that remedy, we not only reversed the granting of the preliminary injunction, but we also remanded with instructions to dismiss the action.

The application of these principles to the present case warranted the dismissal of Gudema's due process claim as a matter of law. It is clear that Davis had no authority to suspend Gudema's license to drive. The driving privilege is granted by the State of New York, not by the Nassau Police Department or even by Nassau County as a municipality. It is undisputed that Davis had no authority to suspend Gudema's license or to prevent her from driving anything other than a Department vehicle. And Gudema presented no evidence that there was any general practice or policy on the part of the Coun-

ty, the Department, or Davis to "suspend" the driver's licenses of Department employees who were under investigation. To the extent, therefore, that Davis's order constituted a suspension of Gudema's license to drive, that order was plainly a random and unauthorized act.

We see no reason why an Article 78 proceeding did not provide Gudema with a meaningful remedy in the wake of Davis's order. Such a proceeding could have been commenced by order to show cause with a request for an immediate stay of the order not to drive. *See* N.Y. C.P.L.R. § 7805; *Melvin v. Union College,* 195 A.D.2d 447, 600 N.Y.S.2d 141, 142–43 (2d Dep't 1993). In such a proceeding, Gudema could have asserted, for example, that Davis had failed to return her license as required by law, *see* N.Y. C.P.L.R., § 7803(1); or that his suspension of her driving privileges "was affected by an error of law or was arbitrary and capricious," *id.* § 7803(3); or that it was an "abuse of discretion as" a "penalty or discipline," *id. See generally Hellenic American,* 101 F.3d at 881. If Gudema could persuade the state court of the merits of her claim, she could have obtained not only declaratory and injunctive relief but also damages "incidental to th[at] primary relief," N.Y. C.P.L.R. § 7806.

We conclude that in the present circumstances, the Article 78 remedy was meaningful, and that there was, therefore, no violation of Gudema's right to due process.

## CONCLUSION

We have considered all of Gudema's contentions on this appeal and have found them to be without merit. The judgment of the district court is affirmed.