**Bill LUEDEKE, Plaintiff,**

v.

**VILLAGE OF NEW PALTZ and Alison Murray, Defendants.**

No. 98–CV–0809.

United States District Court, N.D. New York.

Aug. 27, 1999.

Nardone, Nardone Law Firm, Highland, NY, for plaintiff, Richard Nardone, of counsel.

McCabe, Mack Law Firm, Poughkeepsie, NY, for defendants, David L. Posner, of counsel.

## MEMORANDUM—DECISION & ORDER

McAVOY, Chief Judge.

Plaintiff Bill Luedeke commenced the instant litigation against Defendants Village of New Paltz and Alison Murray (collectively "defendants") pursuant to 42 U.S.C. § 1983 arising out of defendants' issuance of snow removal fines to plaintiff, the placement of a lien on his property, and their subsequent intention to sell his home at a tax sale in satisfaction of such fines. Presently before the Court are defendants' motion for summary judgment pursuant to FED.R.CIV.P. 56 seeking dismissal of the Complaint in its entirety, and plaintiff's cross-motion for summary judgment pursuant to FED.R.CIV.P. 56 seeking judgment on his Complaint as a matter of law.

## I. BACKGROUND

The facts surrounding the instant litigation are undisputed. Plaintiff owns a home and property at 66 South Chestnut Street in the Village of New Paltz (the "Village"), State of New York (the "State"). Plaintiff's property is on the east side of South Chestnut Street. South Chestnut Street is the local name for State Route 208. The State of New York owns the property consisting of Route 208, the sidewalk on the east side of Route 208, plus an additional eight feet east of the sidewalk.

The Village has a snow removal ordinance (the "ordinance") that requires "[t]he owner or occupant of any real property ... abutting any sidewalk ... [to] keep such sidewalk free and clear of snow and ice at all times." VILLAGE OF NEW PALTZ MUN.CODE § 44.22(a). Specifically, property owners are required to remove snow and ice from the sidewalk within twenty-four hours "after cessation of every fall of snow or formation of ice on the sidewalk abutting the premises." *Id.*, at 44.22(b). Pursuant to § 44.22(f):

> If snow or ice shall remain on a sidewalk for more than twenty-four (24) hours after the cessation of snowfall or the formation of ice, the Village may provide for the removal thereof at the expense of the owner ... of the abutting premises.... The Village Treasurer shall send a statement to the owner ... of the premises abutting the sidewalk from which the snow or ice shall [not] have been removed. If the charge is not paid, it shall be a lien upon the premises abutting the sidewalk and shall be collected by the Village Treasurer as an assessment upon said premises on the real property tax statements....

Although plaintiff usually cleared the sidewalk in front of his property, there came a point in time when he discontinued doing so. As a result, the Village had the snow removed and, pursuant to the Village Code, billed plaintiff for the costs of such removal. Plaintiff was billed a total of five times for snow removal during the period of 1995 through 1998.

In the winter of 1995–1996, plaintiff was assessed $55.49 for snow removal. Plaintiff paid this charge "under protest." On December 9, 1996, the Village removed snow from the sidewalk in front of plaintiff's property and billed him $70.03. The bill contained a notice that "if this charge is not paid by April 15, 1997, it will become a lien upon the premises ... and collected on the Real Property Tax Statement next coming due." Def.Ex. H. Plaintiff failed to pay the $70.03, and the charge, therefore, appeared on his 1997 Statement of Village Taxes. *See* Def.Ex. I.

On June 30, 1997, plaintiff appeared at the Village Hall offering to pay all taxes due on his property except the snow removal assessment. The Village Treasurer

advised plaintiff that she was not authorized to accept a partial payment of a tax bill and, therefore, did not accept plaintiff's proffer. *See id.*

On that same day, plaintiff showed Defendant Alison Murray ("Murray"), Code Enforcement Officer for the Village, a copy of his survey that demonstrated that his property boundary ended several feet east of the sidewalk. According to plaintiff, this conclusively demonstrated that he was not subject to the snow removal ordinance because his property did not abut the sidewalk; rather, the State's property abutted the sidewalk. Murray conferred with the Village Attorney and Village Mayor, who advised that plaintiff had an obligation to clear the sidewalk pursuant to the ordinance.

On January 26, 1998, the Village sent plaintiff a letter advising him that "the 1997 Village taxes on ... [his] property are still outstanding ... [and that] [f]ailure to pay these taxes by February 13th[,] [1998] will result in them being advertised as unpaid in preparation for the March tax sale." Def.Ex. K.

Plaintiff continued to refuse to pay the snow removal charge until he was advised by his mortgage lender that "[i]f payment is not remitted within twenty-nine (29) days of the date of this letter, [we] will have no alternative but to remit payment for these taxes in accordance with your mortgage agreement ... [and establish] a tax escrow account." Def.Ex. L. Plaintiff paid the outstanding assessments "under protest," and his property was not sold at a tax sale.

Plaintiff commenced the instant litigation pursuant to 42 U.S.C. § 1983 claiming that the snow removal ordinance deprived him of his due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution. Currently before the Court are defendants' motion for summary judgment pursuant to FED. R.CIV.P. 56 seeking dismissal of the Complaint in its entirety, and plaintiff's cross-motion pursuant to FED.R.CIV.P. 56 seeking judgment on the Complaint as a matter of law.

## II. DISCUSSION

### A. Summary Judgment Standard

██ The standard for summary judgment is well-settled. Under FED.R.CIV.P. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir.1996). The moving party bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting FED.R.CIV.P. 56(c)). The initial burden is to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 2554.

██ Once the moving party has met its burden, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Celotex Corp.*, 106 S.Ct. at 2548. A dispute regarding a material fact is genuine if a reasonable jury could return a verdict for the non-moving party; that is, whether the non-movant's case, if proved at trial, would be sufficient to survive a motion for judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). When reasonable minds, however, could not differ as to the import of the evidence, then summary judgment is proper. *See Bryant v. Maffucci*, 923 F.2d 979,

982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). Although the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought, *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989); *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir. 1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), the motion will not be defeated by a non-movant who raises merely a "metaphysical doubt" concerning the facts or who only offers conjecture or surmise. *Delaware & H.R. Co. v. Consolidated Rail,* 902 F.2d 174, 178 (2d Cir. 1990), *cert. denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991) (quoting *Matsushita,* 106 S.Ct. at 1356); *see also Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990). Indeed, the nonmoving party's opposition may not rest on mere allegations or denials of the moving party's pleading, but "must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e).

Because the underlying facts are not in dispute, the present matter is particularly suited for summary judgment. With this standard in mind, the Court will now address the parties' motions for summary judgment.

## B. Whether the Snow Removal Ordinance Violated Plaintiff's Due Process Rights

Defendants move to dismiss plaintiff's Complaint on the ground that there was no due process violation because plaintiff had adequate pre-deprivation and post-deprivation state-law remedies. Specifically, defendants contend that plaintiff could have commenced a proceeding pursuant to N.Y.C.P.L.R. Art. 78, a declaratory judgment compelling a judicial determination whether his interpretation of the ordinance is correct, an action under N.Y. REAL PROPERTY TAX LAW ART. 7 challenging the assessment, or sued the Village for a refund.

Plaintiff cross-moves for summary judgment contending that an adequate pre-deprivation remedy is required when the complained of deprivation results from the operation of established procedures and that the snow removal ordinance provides for no hearing to determine whether the property at issue abuts the sidewalk within the meaning of the ordinance. Plaintiff contends that the ordinance allows the Village to assess a lien without any prior hearing as to the validity of the charge and that the charge may then form the basis of a foreclosure sale without any opportunity for the taxpayer to contest the validity of the charges before they become final.

■ The first steps in any case involving due process are to ascertain (1) whether the plaintiff has a property interest, and (2) whether there has been a deprivation thereof. *See Gudema v. Nassau County,* 163 F.3d 717, 724 (2d Cir. 1998). There is little doubt, and the parties do not dispute, that plaintiff has a property interest in his house and surrounding property. *See United States v. The Premises and Real Property at 4492 Livonia Rd., Livonia, New York,* 889 F.2d 1258, 1264 (2d Cir.1989) ("[A]n individual's expectation of privacy and freedom from governmental intrusion in the home merits special constitutional protection."). Placing a lien upon one's property "is not a negligible deprivation." *West v. Zurhorst,* 425 F.2d 919, 920 (2d Cir.1970); *see also Connecticut v. Doehr,* 501 U.S. 1, 111 S.Ct. 2105, 2113, 115 L.Ed.2d 1 (1991) ("[E]ven the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection."). Having found that plaintiff was deprived of a property interest, the next question is whether he was afforded due process of law.

■ The general rule is that the due process of law demands prior notice and hearing. *See United States v. James Daniel Good Real Property,* 510 U.S. 43, 114

S.Ct. 492, 500, 126 L.Ed.2d 490 (1993) ("Good"). "We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Id.* at 501 (internal quotations omitted). In determining what process is due, courts often balance the importance of the private interest and the length or finality of the deprivation, the likelihood of governmental error and the probable value of additional safeguards, and the magnitude of the governmental interests involved. *See id.; see also Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265 (1982) (citing *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 902–903, 47 L.Ed.2d 18 (1976); *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 2977–78, 41 L.Ed.2d 935 (1974)). Balancing these factors, the Court finds that plaintiff was entitled to a pre-deprivation hearing.

First, plaintiff's interest in retaining ownership of his residence and surrounding property free and clear of all encumbrances, save the mortgage into which he freely and knowingly entered, is substantial. Few things could be more invasive of one's rights than interfering with the ownership of his or her home. *See Good,* 510 U.S. 43, 114 S.Ct. 492, 501, 126 L.Ed.2d 490 ("[Plaintiff's] right to maintain control over his home, and to be free from governmental interference, is a private interest of historic and continuing importance."); *see, e.g., United States v. Hudson,* 100 F.3d 1409, 1425 (9th Cir.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 353, 139 L.Ed.2d 274 (1997). A lien on plaintiff's property could substantially interfere with his ownership rights such as his ability to freely transfer title. *See Good,* 114 S.Ct. at 501; *Doehr,* 111 S.Ct. at 2112–13.

Second, there is a substantial risk of governmental error in light of the ambiguity of the meaning of the word "abut" in the Village ordinance, the apparent fact that the Village does not review deeds and property lines prior to fining residents for noncompliance, and the fact that the determination to impose the lien was based upon a one-sided view of the facts and law. *See Doehr,* 111 S.Ct. at 2112–13. "The purpose of an adversary hearing is to ensure the requisite neutrality that must inform all governmental decisionmaking. That protection is of particular importance here, where the Government has a direct pecuniary interest in the outcome of the proceeding." *Good,* 114 S.Ct. at 502; *see also Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 2693, n. 9, 115 L.Ed.2d 836 (1991) (Scalia, J.) ("[I]t makes sense to scrutinize governmental action more closely when the State stands to benefit"). The value of additional safeguards here is unquestionable. Determining whether a particular property owner actually violated the snow removal ordinance could avoid the situation presented here where that property owner could be wrongfully deprived of his property interest.

■ Finally, the Village's interest here is relatively insignificant. Although the Village argues that its interests are substantial because it needs to take swift action to remove the "imminent dangers to pedestrians which cannot await the conclusion of court proceedings," Def. Reply Mem. of Law at 4, the Court disagrees. The benefits of sidewalks that are free and clear of snow and ice are unquestionable. However, the Village could easily remove the snow itself, as it does under the ordinance, and then institute a procedure to determine who is liable for the costs of such removal. This would accommodate all the interests involved without imposing any unreasonable burden on the Village. Indeed, the Village utilized a similar procedure in the past. Under the prior snow ordinance, property owners who allegedly were in violation of the snow ordinance were issued an appearance ticket and the property owner was entitled to have a

hearing before the Town Court.[1] *See* Def. Ex. C. This, of course, complied with due process' requirements of notice and a meaningful opportunity to be heard. Furthermore, post-deprivation safeguards do not adequately reduce the risk of an interference with plaintiff's property rights. " 'The Fourteenth Amendment draws no bright lines around three-day, 10–day or 50–day deprivations of property. Any significant taking of property by the State is within the purview of the Due Process Clause.' " *Doehr*, 111 S.Ct. at 2115 (quoting *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556 (1972)). Thus, any increased burden upon the Village pales in comparison to the substantial property interest involved here. Accordingly, plaintiff was entitled to a pre-deprivation hearing.

▮▮▮▮ This conclusions is buttressed by the fact that the Village's actions here were not random and unauthorized, but were taken pursuant to a Village policy. While " 'an adequate post-deprivation remedy is a defense to a Section 1983 due process claim where the deprivation is random and unauthorized, . . . [it is not a defense] where the deprivation complained of results from the operation of established state procedures.' " *Alexandre v. Cortes*, 140 F.3d 406, 411 (2d Cir.1998) (quoting *Butler v. Castro*, 896 F.2d 698, 700 (2d Cir.1990)); *see also Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984); *Gudema*, 163 F.3d at 724; *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir.1996), *cert. dismissed*, 521 U.S. 1140, 118 S.Ct. 15, 138 L.Ed.2d 1048 (1997). Here, the assessments were authorized pursuant to an established procedure—the snow removal ordinance. *Compare Gudema*, 163 F.3d at 724 (suspension of driver's license by Chief of the Internal Affairs Unit of the Nassau County Police Department was random and unauthorized where

the Chief did not have authority to suspend licenses and there was no County policy or practice to suspend licenses). The Village was clearly "in a position to provide for predeprivation process." *Hellenic Am.*, 101 F.3d at 880 (quoting *Hudson*, 468 U.S. at 534, 104 S.Ct. 3194). The remaining question is whether the Village provided plaintiff with an adequate predeprivation remedy.

The Village did provide plaintiff with notice. Plaintiff was provided with "Notice[s] of Assessment For Snow or Ice Removal Village of New Paltz." The notices apprised plaintiff that he was in violation of section 44.22, the amount of the assessments, and that failure to pay the fines by a date certain "will become a lien upon the premises . . . and collected on the [next] Real Property Tax Statement." Plaintiff also received a 1997 Statement of Village Taxes that detailed levies of $895.94 for "Village Tax" and $70.03 for "Snow Removal." Plaintiff further received a notice on January 26, 1998 that his tax bill was in arrears and that "[f]ailure to pay these taxes by February 13th [would] result in them being advertised as unpaid in preparation for the March tax sale."

▮▮▮ While the Village provided plaintiff with notice, they did not afford him the opportunity for a hearing. *See, e.g., Saukstelis v. City of Chicago*, 932 F.2d 1171, 1173 (7th Cir.1991). Plaintiff was entitled to "notice reasonably calculated, under all the circumstances, to apprise . . . [him] of the pendency of the action and afford [him] an opportunity to present [his] objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). "The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance." *Id.* (citing *Grannis v. Ordean*, 234 U.S. 385, 34

---

1. Under the prior procedure, the Village did not take it upon itself to remove the snow prior to issuing an appearance ticket. Of course, the Village could remove the snow itself at the risk of making an erroneous determination of liability under the ordinance.

S.Ct. 779, 58 L.Ed. 1363 (1914); *see also Roller v. Holly,* 176 U.S. 398, 20 S.Ct. 410, 44 L.Ed. 520 (1900)).

On the one hand, the Village afforded plaintiff ample time to present his objections. He was provided with the Notice of Assessment for Snow Removal shortly after December 9, 1996. The notice indicated that the charge would not become a lien on his property and collected on the Real Property Tax Statement next due unless it remained unpaid after April 15, 1997, four months later. Then, once the charge appeared on the Real Property Tax Statement, plaintiff had until July 1, 1997 to pay the taxes and assessment without any interest penalty. When the amount due remained outstanding, the Village again advised plaintiff that he had until February 13, 1998, over one year, to pay after which time the property would be prepared for a tax sale in March 1998.

On the other hand, the Village did not afford plaintiff a forum in which to voice his objections. At no time did the Village give plaintiff the opportunity to present his legal or factual arguments to ensure that it made an informed decision. *See Interboro Inst. Inc. v. Foley,* 985 F.2d 90, 93 (2d Cir.1993) ("The purpose of a pre-deprivation hearing is to ensure that decision-makers have before them the claimant's legal arguments and do not act on a one-sided or otherwise incomplete factual presentation."). Although plaintiff attempted to raise his objections to Murray who, in turn, conferred with the Village Attorney and Mayor, the Village simply responded that he was required to comply with the ordinance without providing him any meaningful opportunity to be heard. The Village never informed plaintiff that he could contest the validity of the ordinance as applied to him through a Village-created mechanism.

Plaintiff should not be required to initiate a potentially expensive, time-consuming state court action to challenge an assessment imposed upon him by the Village because of his purported failure to remove snow from the sidewalk. *See, e.g., Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 1566–67, 56 L.Ed.2d 30 (1978). Rather, the onus should be on the Village, which initiated the adversarial proceedings by issuing a Notice of Assessment, to afford plaintiff an opportunity to be heard.

The Court rejects the Village's argument that due process was satisfied because plaintiff had ample time to initiate an Article 78, declaratory judgment, or other proceeding prior to the Assessment becoming a lien on the property. The mere availability of litigation in the state court system does not comport with due process's guarantee of a meaningful opportunity to be heard. If the availability of such proceedings is deemed sufficient under the Fourteenth Amendment's due process clause, then there would never be a due process violation because, absent some exceptional situations, such proceedings would always be available. Under defendant's rational, the plaintiffs in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), for example, were not denied due process because they could have commenced an Article 78 or other proceeding challenging the decision to terminate their welfare benefits. Yet, we know the Supreme Court found a due process violation. *Id.,* at 1021–22. If the defendants' argument prevailed, then municipalities would have virtually unbridled discretion to impinge upon individuals' property interests, leaving the unwary to retain counsel, search for state statutes authorizing lawsuits, or otherwise affirmatively seek out other avenues of redress to ensure their constitutional rights. The fatal flaw in the Village ordinance is that it provides no procedure for the resolution of disputes regarding its applicability prior to the imposition of liens on property. *See Alexandre,* 140 F.3d at 412; *see also Logan,* 102 S.Ct. at 1156 ("[T]he Due Process Clause grants the aggrieved party the opportunity to present his case and have its merits fairly judged. Thus it has become

a truism that 'some form of hearing' is required before the owner is finally deprived of a protected property interest.").

 For these reasons, the Court finds as a matter of law that the Village ordinance is unconstitutional and violated plaintiff's rights under the Fourteenth Amendment. The Village can be held liable under *Monell v. Department of Soc. Svcs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), for this Constitutional violation because it was the result of a municipal policy—the snow removal ordinance. *See Goldberg v. Town of Rocky Hill*, 973 F.2d 70, 72 (2d Cir.1992) (stating that a legislative act of a town qualifies as a municipal policy).

**C. Whether Alison Murray is Entitled to Qualified Immunity**

 The Court must next address the liability of Murray. Murray issued citations to plaintiff for violating the snow removal ordinance. When plaintiff went to the Village Hall to pay his taxes, he showed Murray his deed, which indicated that the state owned the property on each side of the sidewalk. Murray conferred with the Village Attorney and Mayor, who indicated that the ordinance nonetheless applied to plaintiff. That is the extent of Murray's involvement.

 "A government agent enjoys qualified immunity when he or she performs discretionary functions if either (1) the conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that the conduct did not violate clearly established rights. A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he or she is doing violates that right." *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272 (2d Cir.1999).

 The Court finds that Murray is not personally liable under § 1983 because

she did not violate plaintiff's Constitutional rights. " '[P]ersonal involvement of [a] defendant[ ] in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Id.*, at 278 (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994)); *see also Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir.1998). Under the circumstances of this case, it cannot be said that Murray was personally involved in the Constitutional deprivation.

The Constitutional deprivation here was not the issuance of the citations, but the failure to afford plaintiff an opportunity to be heard prior to imposing a lien on his property. *See* discussion *supra* at II(B). While Murray issued the citations, she had no involvement in the decision to place a lien on plaintiff's property. There is no evidence that she created the policy under which unconstitutional practices occurred, that she had any authority to correct such a policy, or that she carried out that portion of the policy that led to the deprivation of plaintiff's constitutional rights. She merely carried out her function of issuing citations to persons she believed were in violation of the snow removal ordinance.

Because no reasonable, fair-minded trier of fact could find that Murray was personally involved in the deprivation of plaintiff's Constitutional rights, she cannot be held liable therefore. Accordingly, the Complaint against her must be dismissed.

**III. CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment is GRANTED IN PART insofar as the Complaint against Murray, including the Second Cause of Action for punitive damages, is DISMISSED. In all other respects, defendants' motion for summary judgment is DENIED. Plaintiff's motion for summary judgment is GRANTED IN PART insofar as plaintiff is entitled to judgment as a

matter of law against the Village.[2]

**IT IS SO ORDERED**

---

2. The Court expresses no opinion whether plaintiff violated the ordinance.