Charles L. LUDWIG, et al., Plaintiffs,

v.

The CITY OF JAMESTOWN, NEW YORK, et al., Defendants.

No. 05–CV–353.

United States District Court,
W.D. New York.

Sept. 26, 2007.

David J. Seeger, Esq., Buffalo, NY, for Plaintiffs and Counter Defendants.

Wright, Wright and Hampton, Edward P. Wright, of Counsel, Jamestown, NY, for Defendants and Counter Claimants.

## ORDER

RICHARD J. ARCARA, Chief Judge.

This case was referred to Magistrate Judge Leslie G. Foschio, pursuant to 28 U.S.C. § 636(b)(1), on July 14, 2005. On May 31, 2006, defendants filed a motion for summary judgment. On June 14, 2006, plaintiffs filed a cross-motion for summary judgment. On August 10, 2007, Magistrate Judge Foschio filed a Report and Recommendation, recommending that defendants' motion for summary judgment be granted in part and denied in part and that plaintiffs' motion for summary judgment be granted in part and denied in part.

Defendants filed objections to the Report and Recommendation on August 20, 2007, and plaintiffs filed a response thereto. Oral argument on the objections was held on September 24, 2007.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions and hearing argument from the parties, the Court adopts the proposed findings of the Report and Recommendation.

Accordingly, for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation, the Court: (1) denies defendants' motion for summary judgment

insofar as it asserts a defense of qualified immunity; (2) grants plaintiffs' motion for summary judgment insofar as defendants terminated municipal utility service to 19 Cross Street at any time; (3) grants plaintiffs' motion for summary judgment insofar as defendants terminated municipal utility service to 15 Cross Street between January 11, 2005 and March 10, 2005; (4) grant's defendants' motion for summary judgment as to any disconnection of municipal utility service at 15 Cross Street after March 10, 2005; (5) grants defendants' motion for summary judgment on plaintiffs' equal protection claim; and (6) grants defendants' motion for summary judgment on plaintiffs' retaliation claim.

Counsel shall appear on October 29, 2007, at 9:00 a.m. for a meeting to set a trial date.

IT IS SO ORDERED.

**REPORT and RECOMMENDATION**

LESLIE G. FOSCHIO, United States Magistrate Judge.

### JURISDICTION

This case was referred to the undersigned by Honorable Richard J. Arcara on July 14, 2005, for pretrial matters, including report and recommendation on dispositive motions. The matter is presently before the court on motions for summary judgment filed by Defendants and Counter Claimants on May 31, 2006 (Doc. No. 10), and by Plaintiffs and Counter Defendants on June 14, 2006 (Doc. No. 13).

### BACKGROUND

Plaintiffs Charles L. Ludwig ("Ludwig"), Kathleen L. Ludwig ("Kathleen Ludwig"), Ludwig Auction & Realty Co., Inc. ("Ludwig Realty"), and Larry J. Schnelzer ("Schnelzer") (together, "Plaintiff"), commenced this action on May 17, 2005, alleging violations of their civil rights when Defendants the City of Jamestown, New York ("the City" or "Jamestown"), and Jamestown Board of Public Utilities ("BPU") Customer Service Manager Scott L. Bensink ("Bensink") (together, "Defendants"), terminated municipal electric, water and sewer services ("the municipal utility services") to, and filed liens against certain real property owned or leased by Plaintiffs. Plaintiffs specifically assert five claims for relief, including (1) deprivation of property without due process with regard to property located at 15 Cross Street in Falconer, New York ("Falconer"); (2) deprivation of property without due process relative to property located at 19 Cross Street in Falconer; (3) retaliation against Ludwig, Kathleen Ludwig and Ludwig Realty based on Ludwig's exercise of his First Amendment rights in prior litigation against Defendants; (4) denial of equal protection; and (5) retaliation against Schnelzer in violation of Schnelzer's First Amendment rights. Plaintiffs seek compensatory damages and costs, including attorney's fees, declaratory judgment and an injunction against Defendants actions allegedly violating Plaintiff's civil rights.

On June 16, 2005, Defendants filed their answer, asserting as a counterclaim that Plaintiffs have brought the instant action to avoid paying delinquent utility bills and to intimidate officials of Jamestown's BPU so as to gain a business advantage at taxpayer expense. Plaintiffs' answer to the counterclaim was filed on June 24, 2005.

On May 31, 2006, Defendants filed a motion for summary judgment ("Defendants' motion"). The motion is supported by the attached Statement of Undisputed Facts Pursuant to Local Federal Rule of Civil Procedure 56 (Doc. No. 10–2) ("Defendants' Statement of Facts"), Memorandum of Law (Doc. No. 10–3) ("Defendants'

Memorandum"), the Affidavit of Edward P. Wright, Esq. ("Wright") (Doc. No. 10–4) ("Wright Affidavit"), the Affidavit of Bensink (Doc. No. 10–5) ("Bensink Affidavit"), with attached exhibits A through H (Doc. No. 10–6) ("Bensink Affidavit Exh(s). ___"), and the Affidavit of Jamestown BPU Business Manager Michael A. Anderson ("Anderson") (Doc. No. 10–7) ("Anderson Affidavit"), with attached exhibits A through G (Doc. No. 109) ("Anderson Affidavit Exh(s). ___").

On June 14, 2006, Plaintiffs filed a motion for summary judgment ("Plaintiffs' Motion").[1] The motion is supported by the attached Affidavit of David J. Seeger, Esq. ("Seeger") (Doc. No. 13–2) ("Seeger Affidavit"), with attached exhibits A through F (respectively, Doc. Nos. 13–3 through 13–8) ("Seeger Affidavit Exh(s). ___"), the Affidavit of Ludwig (Doc. No. 13–9) ("Ludwig Affidavit"), with attached exhibits A through E (respectively, Doc. Nos. 13–10 through 13–14) ("Ludwig Affidavit Exh(s). ___"), the Affidavit of Kathleen Ludwig (Doc. No. 13–15) ("Kathleen Ludwig Affidavit"), with attached exhibits A through C (respectively, Doc. Nos. 13–16 through 13–18), the Affidavit of Schnelzer (Doc. No. 13–19) ("Schnelzer Affidavit"), with attached exhibits A and B (respectively, Doc. Nos. 13–20 and 13–21) ("Schnelzer Affidavit Exh(s). ___"), Plaintiffs' Statement of Undisputed Facts (Doc. No. 13–22) ("Plaintiffs' Statement of Facts"), and Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment (Doc No. 13–23) ("Plaintiffs' Memorandum").

In opposition to Plaintiffs' motion, Defendants filed on July 28, 2006, the Answering Affidavit of Michael A. Anderson (Doc. No. 15) ("Anderson Answering Affidavit"), with attached exhibits A through G ("Anderson Answering Affidavit Exh(s). ___"), the Answering Affidavit of Jamestown BPU Customer Service Representative Angela L. Himes ("Himes") (Doc. No. 16) ("Himes Answering Affidavit"), with attached Exh. A ("Himes Answering Affidavit Exh. A"), Defendants' Response to Plaintiff's Statement of Undisputed Facts (Doc. No. 17) ("Defendants' Response to Plaintiffs' Statement of Facts"), and Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment (Doc. No. 18) ("Defendants' Response Memorandum").

In opposition to Defendants' motion, Plaintiffs filed on July 28, 2006, the Affidavit of David J. Seeger, Esq. (Doc. No. 20) ("Seeger Response Affidavit"). Attached as exhibits to the Seeger Response Affidavit are the same affidavits and exhibits attached in support of Plaintiffs' motion, including the Kathleen Ludwig Affidavit with exhibits A through C (respectively, Doc. Nos. 20–2 through 20–5), the Schnelzer Affidavit with exhibits A and B (respectively, Doc. Nos. 20–6 through 20–8), the Ludwig Affidavit with exhibits A through E (respectively, Doc. Nos. 20–9 through 20–14), as well as Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (Doc No. 20–15) ("Plaintiffs' Response Memorandum"), and Plaintiffs' Response to Defendants' Statement of Undisputed Facts (Doc No. 20–16) ("Plaintiffs' Response to Defendants' Statement of Facts").

---

1. Plaintiffs had previously moved on May 31, 2006, for an extension of time in which to file for summary judgment (Doc. No. 11). On June 9, 2006, the motion was granted and Plaintiffs' deadline for filing for summary judgment was extended to June 14, 2006 (Doc. No. 12). Accordingly, Plaintiffs' summary judgment motion, filed on June 14, 2006, was timely.

In further support of Defendants' motion, Defendants filed on August 18, 2006, the Reply Affidavit of Edward P. Wright (Doc. No. 21–1) ("Wright Reply Affidavit"), and Defendants' Reply to Plaintiffs' Response to the Statement of Undisputed Facts (Doc. No. 21–2) ("Defendants' Reply to Plaintiff's Response to Defendants' Statement of Facts"). In further support of Plaintiffs' motion, Plaintiffs filed on August 18, 2006, the Reply Affidavit of Seeger (Doc. No. 22–1) ("Seeger Reply Affidavit"), attached to which are Exh. A (Doc. No. 22–2) ("Seeger Reply Affidavit Exh. A"), the Reply Affidavit of Ludwig (Doc. No. 22–3) ("Ludwig Reply Affidavit"), with attached exhibits A through D (respectively, Doc. Nos. 22–4 through 22–7), and Plaintiffs' Reply Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 22–8) ("Plaintiffs' Reply Memorandum").

On September 19, 2006, Defendants filed the Sur–Reply Affidavit of Edward P. Wright (Doc. No. 25) ("Wright Sur–Reply Affidavit"), with attached Exh. A ("Wright Sur–Reply Affidavit Exh. A"). Oral argument was deemed unnecessary.

Based on the following, summary judgment should be GRANTED in favor of Plaintiffs and DENIED as to Defendants as to the due process claim pertaining to the period January 11, 2005 through March 10, 2005 as to the premises located at 15 Cross Street in Falconer, and for the period January 11, 2005 to date as to the premises located at 19 Cross Street in Falconer, but in regard to all other claims, summary judgment should be GRANTED in favor of Defendants and DENIED as to Plaintiffs.

### FACTS [2]

Article IX of the Jamestown City Charter establishes the Board of Public Utilities ("the BPU"), as a department within the Defendant City of Jamestown, New York ("Jamestown"). The BPU is responsible for providing certain utility services, including electric, water and sewer ("the municipal utilities"). Defendant Scott L. Bensink ("Bensink") is a self-employed certified public accountant who, from March 2002 until September 2005, served as customer services supervisor and key accounts manager for the BPU. In that position, Bensink was responsible for supervising the billing and collection of customer accounts, and overseeing the connection and disconnection of municipal utility service.

Plaintiff Charles L. Ludwig ("Ludwig") owns real property located at 235 Fluvanna Avenue ("235 Fluvanna") in the City of Jamestown, New York. Ludwig leased 235 Fluvanna to a restaurant business, the Eatery. From 1985 until 1993, Ludwig operated an auction business under the assumed name "Ludwig Auction and Realty Service" ("Ludwig Auction"). Ludwig discontinued using the assumed name Ludwig Auction in February 1993, at which time Ludwig Auction and Realty Co., Inc. ("Ludwig Realty" or "the company"), was incorporated. Ludwig's wife, Plaintiff Kathleen L. Ludwig ("Kathleen Ludwig"), is the owner, sole shareholder, and president of Ludwig Realty, and Ludwig is the company's vice president or secretary.

Ludwig Realty leased commercial space for its business office at 15 Cross Street ("15 Cross Street") in the Village of Falconer, New York ("Falconer"), which was owned by Michael Fiorella ("Fiorella"). Prior to the incorporation of Ludwig Realty, the municipal utility service at 15 Cross Street was in the name of Ludwig Auction.

---

**2.** Taken from the pleadings and motion papers filed in this action.

The parties dispute whether the municipal utility service at 15 Cross Street was ever transferred to Ludwig Realty. Although there were several tenants at 15 Cross Street, the premises were initially served by only one electric meter through which all tenants in the building received electric service.[3]

Ludwig individually owns real property located at 19 Cross Street ("19 Cross Street") in Falconer, where Ludwig leased space to various tenants, including to Ludwig Realty. The property is improved by a barn which has been used as an auction house in connection with auctions conducted by Ludwig Realty. At all times relevant to this action, the municipal utility service at 19 Cross Street had been in Ludwig's name as an individual.

In 1999, Ludwig learned that the tenants in charge of the Eatery at 235 Fluvanna were about to file for bankruptcy protection. On November 24, 1999, Ludwig contacted the BPU and requested that the municipal utilities at 235 Fluvanna be put in Ludwig's name. The request was made in a letter written by Ludwig on letterhead for "Ludwig Auction & Realty Co., Inc., 15 Cross Street, P.O. Box 69, Falconer, NY" and directed to one Linda Strong at BPU's Electric Division ("November 29, 1999 Letter").[4] Previously, it had not been the BPU's practice to transfer an unpaid balance from one account in a customer's name to another account in the same customer's name; rather the BPU would file a Suspended Debtor Lien ("SDL") against the property owner. When the New York State Comptroller's Office criticized the BPU's practice of filing SDLs against property owners, however, the BPU began transferring unpaid

balances to other accounts in the same customer's name whenever it was possible to match the accounts by the customer's Social Security Number ("SSN"). Because the SSN provided for the 235 Fluvanna account matched the SSN provided for the 15 Cross Street account, Ludwig's balance transfer request was accommodated and the unpaid municipal utilities account for 235 Fluvanna was transferred to Ludwig's name. Ludwig continued maintaining municipal utility service at 235 Fluvanna until September 4, 2002.

At the time of the final meter reading at 235 Fluvanna, on September 4, 2002, more than $4,800 in utility bills was owed for municipal utility service provided to 235 Fluvanna between June 2002 and September 4, 2002, for which Ludwig has admitted responsibility, yet has refused either to pay the amount in full, or to enter into a payment agreement to make regularly scheduled payments to satisfy the debt. BPU maintains that between 2002 and 2005, 34 disconnect notices were mailed to Ludwig advising that the utility account for 235 Fluvanna was overdue and warning that municipal utility service, including electric, water and sewer, at 15 and 19 Cross Street would be disconnected for the nonpayment. Each such disconnect notice contained the following "disconnect notice dispute language",

> City of Jamestown Board of Public Utilities has established procedures to consider customer complaints before shutting off service. If you believe your bill is wrong, call us immediately and ask for an explanation. If you disagree with our explanation, you may ask the New York State Public Service commission to review your account. the New York

---

3. No information is provided regarding any water meter at the premises, nor is it clear whether BPU customers had water meters or were billed according to a flat rate.

4. Bensink Affidavit Exh. A.

State Public Service Commission is located at: Ellicott Square Builting, 295 Main St, Room # 998, Buffalo, New York 14203. The telephone number is 716–847–3400, or PSC Helpline 1–800–342–3377, or PSC Hotline 1–800–342–3355. If your disagree with only part of the bill, we will leave your service on while your complaint is being investigated as long as you pay the part you agree you owe.

See, e.g., Anderson Affidavit Exh. D (disconnect notice advising service would be terminated at 19 Cross Street on January 11, 2005 if payment in the amount of $60.07 was not received by January 10, 2005).

In 1989, Plaintiff Larry J. Schnelzer ("Schnelzer"), self-employed as a building contractor specializing in building remodeling and restoration, leased commercial space from Fiorella at 15 Cross Street where Schnelzer has since maintained his woodworking shop and supply storage. From the time Schnelzer initially leased space at 15 Cross Street in 1989 until 2005, Schnelzer did not obtain any municipal utility service in his name but, rather, obtained such services through Ludwig Realty, the realty and auction business operated by Kathleen Ludwig on the same premises.

In December 2004, the BPU performed account maintenance on its computer at the behest of New York State's Comptroller's Office, and discovered Ludwig's past due municipal utility service account for 235 Fluvanna, and that Ludwig was also listed as a current customer at 15 Cross Street, which was also past due. By letter dated December 14, 2004 ("December 14, 2004 Letter"), and addressed to "Ludwig Auction & Realty, C/O Charles Ludwig, PO Box 69, 15 Cross Street," Bensink advised that a recent review of the BPU's records had revealed an unpaid bill in the amount of $4,852.91 for services rendered at 235 Fluvanna as of September 4, 2002, the date of the final meter reading for such premises. Ludwig was informed that the bill must be paid in full, or other payment arrangements made, by January 7, 2005, or the municipal utility service at 15 Cross Street would be terminated on January 11, 2005. The December 14, 2004 letter does not mention 19 Cross Street, nor does it provide any information as to how any objection to the notice could be presented. Although the signature line at the bottom of the December 14, 2004 letter indicates it was prepared for Bensink's signature, the letter was not signed, and Plaintiffs deny ever receiving the letter. The December 14, 2004 letter was accompanied by a disconnect notice advising that $79.13 for electric, water and sewer [5] service was past due on the 15 Cross Street account, and that unless payment was made by January 10, 2005, such municipal utility service would be disconnected at that address. A separate disconnect notice addressed to Ludwig also advised that $60.07 for electric, water and sewer service was past due on the 19 Cross Street account, and that failure to pay that amount by January 10, 2005 would result in a disconnection of municipal utility service at that address. Neither the disconnect notice for the 15 Cross Street nor the 19 Cross Street property mention that payment was also required for the 235 Fluvanna account.

On January 10, 2005, Ludwig went to the BPU to deliver utility payments for municipal utility service at 15 and 19 Cross Street, which were past due. Although Ludwig's payment of the two utility bills

---

**5.** The record does not explain that BPU could actually shut off sewer line service, or whether the loss of sewer services was a consequence of losing water service.

brought the utility accounts at both 15 and 19 Cross Street current, Ludwig was reminded at that time that if the account for 235 Fluvanna remained unpaid, the municipal utility accounts at 15 and 19 Cross Street would be terminated and the municipal utility service would be disconnected from both properties. Despite Ludwig's insistence that his wife's corporation, Ludwig Realty, had no connection to the property at 235 Fluvanna, and that Ludwig had no ownership rights in Ludwig Realty, on January 11, 2005, the BPU disconnected the municipal utility service to 15 and 19 Cross Street, thereby rendering both Ludwig Realty and Larry Schnelzer's contracting and home remodeling business without electricity, sewer or water. Immediately prior to disconnecting the service, a BPU representative went to 15 Cross Street, requesting Plaintiffs either pay in full or make arrangements for scheduled payments for the outstanding balance on the 235 Fluvanna account, or service at 15 and 19 Cross Street would be disconnected. Repeated attempts to have municipal utility service restored to 15 and 19 Cross Street without first satisfying the unpaid account for 235 Fluvanna were unsuccessful. The lack of utilities has caused Ludwig Realty to lose business as Kathleen Ludwig was unable to meet with clients in the 15 Cross Street office, or to hold auctions at the 19 Cross Street location. Ludwig also lost rental income as he was unable to lease space to tenants at 19 Cross Street.

When Schnelzer realized his business at 15 Cross Street was without electrical service, Schnelzer contacted the BPU and was advised that for service to be restored to his leased space, the account for 235 Fluvanna would either have to be paid in full or a payment arrangement made, or, alternatively, Schnelzer could apply for separate service to that portion of the premises Schnelzer leased. On January 17, 2005, Schnelzer applied for electrical service for the portion of the building he leased at 15 Cross Street, and electrical[6] services were then provided to Schnelzer's leased space.

After the BPU installed an electric service box and meter and began providing electrical service to Scnelzer's leased space at 15 Cross Street, it was discovered on February 10, 2005, that the space leased by Ludwig Realty also had regained electrical service. Village of Falconer Code Enforcement Officer Glen Dickerson ("Dickerson") inspected the property and discovered Schnelzer had made an illegal cross-connection between the two spaces in violation of the National Electrical Code and posing a safety hazard. Dickerson advised Schnelzer of the violation, requesting Schnelzer remedy the illegal connection to alleviate the safety hazard. The BPU and Dickerson agreed not to disconnect Schnelzer's electrical service provided Schnelzer remedied the problem by the next day. On February 11, 2005, the BPU and Dickerson returned to 15 Cross Street and saw that Schnelzer had removed the cross-wiring. Accordingly, electrical service to Schnelzer's leased space was not again interrupted as a result of the violation.

On February 11, 2005, Ludwig wrote a letter to BPU Business Manager Anderson ("February 11, 2005 Letter") (Bensink Affidavit Exh. B), acknowledging responsibility for the unpaid municipal utilities at 235 Fluvanna, and stating he did not then have

---

**6.** It is unclear from the record how or when Schnelzer's water service was restored to his leased space at 15 Cross Street, although Schnelzer indicates that water service was restored. *See* Schnelzer Affidavit ¶ 29 ("deponent [Schnelzer] suffered a loss of water service for one year after the termination of utility service to the Ludwig Auction & Realty Co., Inc. accounts.").

the funds to pay the account. Ludwig also offered to enter into an agreement to pay the past due account when he had the money, and advised the BPU that the interruption of municipal utility service "at our two buildings in Falconer" would only result in further expenses, rendering it harder for Ludwig to pay on the 235 Fluvanna account. February 11, 2005 Letter.

Some time between the January 11, 2005 disconnection of municipal utility service to 15 and 19 Cross Street, and February 22, 2005, Ludwig and Kathleen Ludwig filed a complaint with the Public Service Commission ("PSC") Office of Customer Service ("OCS") ("PSC Complaint"), who directed that such service be restored by February 22, 2005, and a new disconnect service notice issued. Accordingly, service was restored on February 22, 2005, and a new disconnect service notice was issued, which the Ludwigs received on February 25, 2005, advising that the past due amount of $4,915.84 for municipal utility services must be paid by March 9, 2005, or BPU would disconnect municipal utility service to 15 Cross Street on March 10, 2005. Because no payment was received nor any payment plan negotiated, municipal utility service was disconnected at 15 Cross Street on March 10, 2005.[7]

On June 15, 2005, a hearing ("the hearing") was held before PSC OCS informal hearing officer Randall S. Fafard ("Hearing Officer Fafard"), in connection with the PSC Complaint, concerning the continuing lack of municipal utilities service at 15 Cross Street.[8] Following the hearing, the Hearing Officer Fafard requested additional information from the parties, including documentation as to why the BPU was holding Ludwig Realty responsible for the

unpaid 235 Fluvanna bill. The Ludwigs were asked to provide a Taxpayer ID and a lease or deed pursuant to which they occupied 15 Cross Street. In response to the request, BPU provided documentation demonstrating that Ludwig Auction and Ludwig Realty used the same business address and post office box, that bills for the two businesses had been paid from a common business account, and that Ludwig's SSN was also used for the Ludwig Realty account.

On October 20, 2005, Hearing Officer Fafard rendered a hearing decision, finding that although the January 11, 2005 disconnection of services to 15 Cross Street was improper, based on a lack of proper notice "such as a bill showing the amount for which the service could be terminated," but that the OCS remedied the situation on February 22, 2005 when service was restored without requiring any payment. Nevertheless, BPU's understanding that Ludwig Realty was an alternate business name for Ludwig was found to be reasonable given that both Ludwig Realty and Ludwig used the same post office box and checking account, and such fact is reflected in the February 11, 2005 letter in which Ludwig admitted responsibility for the unpaid 235 Fluvanna account was on Ludwig Realty letterhead. As such, Ludwig Realty was found responsible for the unpaid balance of the transferred 235 Fluvanna account. Furthermore, the subsequent disconnection of services to 15 Cross Street on March 10, 2005 based on Ludwig Realty's non-payment of the unpaid 235 Fluvanna account was found proper.

7. It is not clear from the record whether municipal utility service were also disconnected at 19 Cross Street on March 10, 2005.

8. It is not evident from the record whether the disconnection of electric service at 19 Cross Street was also challenged in the PSC Complaint.

Plaintiffs Ludwig and Kathleen Ludwig maintain Defendants terminated the municipal utility service for 15 and 19 Cross Street in retaliation for Ludwig's success in a previous action in this court, *Real Estate Investors Association v. City of Jamestown,* No. 00–CV–815A(F) (*"Real Estate Investors"*). Plaintiff Schnelzer maintains that Defendants intended to retaliate against him for vocally supporting Ludwig and criticizing the BPU.[9]

## DISCUSSION

### 1. Summary Judgment

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a) and (b); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). The court is required to construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams,* 193 F.3d 581, 589 (2d Cir.1999) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505). The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment. *Celotex,* 477 U.S. at

322, 106 S.Ct. 2548; *see Anderson, supra,* at 247–48, 106 S.Ct. 2505 ("summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party"). In assessing a record to determine whether there is genuine issue of material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought. *Rattner,* 930 F.2d at 209.

"[W]here the non-moving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' Such a motion, whether or not accompanied by affidavits, will be 'made and supported as provided in this rule [FRCP 56],' and Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548 (1986) (quoting Fed.R.Civ.P. 56). Thus, "as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the non-moving party's case." *Nora Beverages, Inc. v. Perrier Group of America, Inc.,* 164 F.3d 736, 742 (2d Cir.1998). Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all materi-

9. The record does not indicate how or when Schnelzer allegedly voiced his support for Ludwig. Rather, the Complaint states "[Schnelzer] has publicly criticized Defendants for policies that are arbitrary with respect to himself and the other Plaintiffs, for retaliating against the Ludwig Plaintiffs on

account of their exercise of First Amendment rights, and for treating Plaintiff Schnelzer differently than other persons similarly situated through, for example and without limitation, alleging non-existent building code violations in order to deprive the Ludwigs of electricity and other utility service." Complaint ¶ 67.

al facts, the non-moving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir.1995).

Although a summary judgment motion may be made with or without supporting affidavits, if affidavits are submitted, they "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(a). Rule 56 further provides that

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed.R.Civ.P. 56(e).

"However, if the motion for summary judgment is not made and supported as provided in Rule 56, the Rule does not impose on the party opposing summary judgment an obligation to come forward with affidavits or other admissible evidence of his own." *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir.2000) (reversing granting of summary judgment in favor of defendant because defendant failed to allege factual basis for assertions contained in defendant's affidavit such that plaintiff, as the party opposing summary judgment, was not required to adduce evidence to defeat summary judgment and the "self-serving" nature of plaintiff's affidavit statements went to the weight of the statements, rather than to their admissibility).

### 2. § 1983 Claims

Although Plaintiffs have denominated their civil rights claims as in violation of 42 U.S.C. § 1983, "Section 1983 'is not itself a source of a substantive rights,' but merely provides 'a method for vindication of federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). A civil rights action under 42 U.S.C. § 1983 requires that the plaintiffs establish the challenged conduct was committed by persons acting under color of state law and deprived plaintiffs of rights, privileges or immunities secured by the Constitution or laws of the United States. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150–51, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443, (1989); and *Baker, supra*, at 140, 99 S.Ct. 2689.) Here, Plaintiffs allege infringement of their rights under the First (freedom of speech, association and to petition government for redress of grievances), and Fourteenth (due process and equal protection) Amendments.

Pursuant to § 1983, an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States. Infringement of a federal right must be alleged in asserting a § 1983 civil rights claim. *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). In particular, § 1983 provides, in pertinent part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or

usage, of any State, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

■■■ "A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action." *Tancredi v. Metropolitan Life Insurance Co.,* 316 F.3d 308, 312 (2d Cir. 2003). *See United States v. International Brotherhood of Teamsters,* 941 F.2d 1292, 1295 (2d Cir.1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action."). Further, a civil rights action may be maintained against a municipality provided the claimant identifies the municipal policy or custom that allegedly caused the claimant's injury. *Monell v. Dep't of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Neighbour v. Covert,* 68 F.3d 1508, 1510 (2d Cir.1995).

In the instant case, it is undisputed that Defendants acted pursuant to local municipal laws and regulations derived from New York State law in terminating Plaintiffs' municipal utility service. As such, Defendants' actions were pursuant to a municipal policy or custom sufficient to subject Defendants to § 1983 liability if the requisites for any civil rights violation are present.

### A. Qualified Immunity

Defendants maintain that Bensink, insofar as he was employed, pursuant to a contract with the City of Jamestown as the BPU's customer service representative responsible for supervising the connection and disconnection of municipal utility service, is qualifiedly immune from liability on the instant claims. Defendants' Memorandum at 4–5. Plaintiffs have not responded in opposition to this argument.

■■■ The doctrine of qualified immunity "shields a government official acting in an official capacity from suit for damages under § 1983 unless the official 'violated clearly established rights of which an objectively reasonable official would have known.'" *Blouin v. Spitzer,* 356 F.3d 348, 359 (2d Cir.2004) (quoting *Kinzer v. Jackson,* 316 F.3d 139, 143 (2d Cir.2003)). "The determination generally involves a two-step inquiry: do the facts alleged show the officer's conduct violated a constitutional right, and, if so, was the right in question clearly established?" *Blouin, supra* (quoting *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Here, the record before the court fails to establish that qualified immunity shields Bensink from the instant litigation.

In particular, the facts, as alleged in the Complaint and viewed in the light most favorable to Plaintiffs as required on summary judgment, *Rattner,* 930 F.2d at 209, assert that Bensink violated Plaintiffs' rights to due process by terminating municipal utility service to 15 and 19 Cross Street without first providing the requisite notice, advising Plaintiffs of their right to dispute the reason for the termination. Complaint ¶¶ 30–32, and 45–47. Moreover, at the time of the alleged constitutional violations, Plaintiffs' right to proper notice before the disconnection of municipal utility service was clearly established. *Memphis Light, Gas and Water Division v. Craft,* 436 U.S. 1, 14–15, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978) (requiring public utility company to provide customers with notice of threat of termination of service,

as well as the opportunity to present objections to the impending termination). Relevantly, on September 30, 2004, three and a half months before the Jamestown BPU disconnected Plaintiffs' municipal utility service at 15 and 19 Cross Street for nonpayment of the municipal utility service account at 235 Fluvanna, Chief Judge Arcara rendered his decision in *Real Estate Investors*, specifically holding that the BPU's disconnection notices failed to comport with constitutional due process requirements that a public utility customer be provided with notice of the impending termination of service, and the opportunity to voice objection to such termination. *Real Estate Investors Association v. City of Jamestown*, No. 00–CV–815A(F), 2004 WL 2202591, **3–4 (W.D.N.Y. Sept.30, 2004).

On this record, a reasonably jury could agree with Plaintiffs' allegations that Bensink authorized the disconnection of Plaintiffs' municipal utility service at 15 and 19 Cross Street without first providing the requisite notice in violation of Plaintiffs' due process rights. Accordingly, Defendants' summary judgment motion, insofar as it asserts the defense of qualified immunity, should be DENIED.

**B. Due Process**

Plaintiffs alleged they were deprived of property without due process of law in violation of the Fourteenth Amendment when Defendants disconnected municipal utility service to 15 and 19 Cross Street without providing notice of or an opportunity for Plaintiffs to object to the impending disconnection. Complaint ¶¶ 23–25, 29–33, 40, 44–48. Defendants argue in support of summary judgment that Plain-

tiffs received more than 34 notices of impending termination of their municipal utility service since November 1999 when Ludwig requested that services at 235 Fluvanna be transferred to his name, and also received multiple notices of impending termination with respect to the municipal utility service for 15 and 19 Cross Street, each of which advised of the procedures established by BPU to object to the impending termination, but that Plaintiffs never availed themselves of such procedures. Defendants' Memorandum at 5–6. Plaintiffs argue that none of the notices adequately apprised Plaintiffs of the impending deprivation of a protected property interest either because the notices were not addressed to the correct party, or failed to include the requisite language regarding the right to dispute the impending terminations. Plaintiffs' Memorandum at 9–12. Defendants argue in response that the notices sufficiently complied with due process. Defendants' Reply Memorandum at 4–5. Plaintiffs argue in response that none of the notices sufficiently advised of the right to object as required by due process. Plaintiffs' Reply Memorandum at 7–9.

"The first steps in any case involving due process are to ascertain (1) whether the plaintiff has a property interest, and (2) whether there has been a deprivation thereof." *Luedeke v. Village of New Paltz*, 63 F.Supp.2d 215, 220 (N.D.N.Y.1999) (citing *Gudema v. Nassau County*, 163 F.3d 717, 724 (2d Cir.1998)). That Plaintiffs had a protected property interest in receiving utility service from a municipal utility service provider, *i.e.*, the BPU, created by state law,[10] at 15 and 19

---

10. The parties do not dispute that the BPU is a department of the City of Jamestown, and that Jamestown "owns and operates municipal utility systems, including electric, water,

district heat, sewer and solid waste divisions, pursuant to Article 9, Section 1, of the New York State Constitution, Sections 94 and 360 of the New York General Municipal Law, and

Cross Street is settled. *Memphis Light, Gas & Water v. Craft,* 436 U.S. 1, 9–12, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). The termination of such service thus deprived Plaintiffs of a protected property interest. *Id.* Having found that Plaintiffs were deprived of a protected property interest, the court next considers whether Plaintiffs were afforded due process of law before such deprivation.

Pursuant to N.Y. Pub. Serv. Law §§ 4 and 66, the PSC is authorized to promulgate regulations applicable to public utility corporations, including Jamestown's BPU. The PSC regulations pertaining to non-residential utility services provide that a utility service provider may require payment of utility services provided and billed to prior accounts in the customer's name for which the customer is legally responsible. N.Y. Comp.Codes R. & Regs. Tit. 16 § 13.2(a). Significantly, Ludwig does not deny but, rather, admits that he is responsible for payment of the 235 Fluvanna account. Bensink Affidavit Exhs. A (November 24, 1999 Letter) and B (February 11, 2005 Letter).

 Due process of law requires both notice of the threatened deprivation of property and an opportunity to object to the impending deprivation. *United States v. James Daniel Good Real Property,* 510 U.S. 43, 53–54, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). Notice is sufficient if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action [at issue] and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). *See Weigner v. City of New York,* 852 F.2d 646 (2d Cir.1988) ("due process only requires notice of the pendency of 'the pendency of

the action' and an opportunity to respond."). Due process also requires that a party be given a reasonable opportunity to be heard and that a hearing be held at a meaningful time and in a meaningful manner before a party is finally deprived of a property interest. *Parratt v. Taylor,* 451 U.S. 527, 540, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The degree of formality and procedural requisites of an adequate hearing vary depending on the particular facts and circumstances of the situation at hand. *Burtnieks v. City of New York,* 716 F.2d 982, 987 (2d Cir.1983). *See Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (considering procedural due process as flexible, constitutional protection, calling calls for such procedural protections as the particular situation demands). Accordingly, whether due process has been afforded requires review of the interests that are affected by Defendants' terminating Plaintiffs' municipal utility service at 15 and 19 Cross Street based on the unpaid 235 Fluvanna account.

The Supreme Court has articulated the factors to be considered by courts in determining whether a government deprivation of an individual's property violates due process as follows: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In the instant case, both Plaintiffs' and Defendants' interests are strong. Specifically, the termination of municipal utility service to 15 and 19 Cross Street

Title 9 of Chapter 655 of the Laws of New York, 1923." Answer ¶¶ 9 and 10.

has interfered with Plaintiffs' ability to operate their businesses. On the other hand, Defendants' interest in recovering the costs of providing such service is also substantial. As such, the relevant inquiry for the court is the potential for the erroneous deprivation of Plaintiffs' property in consideration of the procedures employed by Defendants in terminating utility service in an attempt to force Plaintiffs to pay the delinquent account balance from 235 Fluvanna.

■ With regard to the notice requirement, the two disconnect notices submitted in connection with the instant summary judgment requests with regard to the 15 Cross Street premises are addressed only to "Ludwig Auction Realty." Bensink Affidavit Exhs. C and F; Anderson Affidavit Exh. C. That these utilities were current as of January 10, 2005 when Ludwig paid them in person, establishes that Ludwig assumed some responsibility for their payment, and on this conceded fact no reasonable juror could find otherwise. Moreover, insofar as Plaintiffs claim that Ludwig, in requesting that the unpaid 235 Fluvanna account balance be transferred to his accounts in November 1999, that Ludwig sent such request on letterhead for Ludwig Realty, that no other SSN was ever provided for the municipal utility service upon incorporating Ludwig Realty in 1993, demonstrates that Ludwig, at best, acquiesced in the billing of such service at 15 Cross Street in Ludwig's name. In fact, there is no indication in the record that Kathleen Ludwig's SSN was ever provided to BPU causing it to bill any services in Kathleen Ludwig's name. Accordingly, no reason-

able jury could find that the fact that the December 14, 2004 Letter and disconnect notices were sent to "Ludwig Auction and Realty" failed to reach the party, Ludwig himself, responsible for the accounts.

■ As to the requirement that the constitutionally required notice also advise of the opportunity to present objections, the December 14, 2004 letter contains no language regarding the procedure by which Plaintiffs could present objections to the impending termination of services at 15 Cross Street and, further, fails to mention the impending termination of services at 19 Cross Street.[11] Accordingly, the December 14, 2004 provides insufficient notice as required for due process.

■ Although Defendants contend that Plaintiffs were sent 34 notices regarding the unpaid balance on the 235 Fluvanna account, Defendants' Memorandum at 5; Wright Affidavit ¶ 3(a), only three undated disconnect notices have been submitted in connection with summary judgment, including (1) a disconnect notice advising that the municipal utility service at 15 Cross Street would be terminated on January 11, 2005, unless payment in the amount of $79.13 was remitted by January 10, 2005, Bensink Affidavit Exh. C; (2) a disconnect notice advising that the municipal utility service at 19 Cross Street would be terminated on January 11, 2005, unless payment in the amount of $60.07 was remitted by January 10, 2005, Anderson Affidavit Exh. D; and (3) a disconnect notice advising that the municipal utility service at 15 Cross Street would be terminated on March 10, 2005, unless payment in the

---

11. Because the December 14, 2004 Letter does not contain the requisite notice regarding Plaintiffs' opportunity to raise objections to the threatened termination of services at 15 Cross Street, such letter fails to comport with due process notice requirements, *Memphis* *Light, Gas & Water Div.,* 436 U.S. at 14, 98 S.Ct. 1554, and the court addresses neither the impact of Bensink's failure to sign the letter, nor Defendants' belated attempt to authenticate the letter with the Himes Answering Affidavit (Doc. No.16).

amount of $4,915.84 was remitted by March 9, 2005. Anderson Affidavit Exh. C; Bensink Affidavit Exh. F. Significantly, none of these notices mention the possible termination of municipal utility service at 19 Cross Street based on the unpaid 235 Fluvanna account balance. As such, Plaintiffs have never received proper notice regarding the termination of municipal utility service at 19 Cross Street, *Memphis Light, Gas & Water Div.,* 436 U.S. at 14, 98 S.Ct. 1554, and summary judgment as to Plaintiffs' due process claims should be GRANTED as to the termination of such service at 19 Cross Street.

■ With regard to 15 Cross Street, the initial notice purportedly advising Plaintiffs of the threat of termination of municipal utility service is the December 14, 2004 Letter, Bensink Affidavit Exh. C, which does not contain any language advising Plaintiffs of the right to object to the termination of such service. Further, although the December 14, 2004 Letter was accompanied by a disconnect notice for 15 Cross Street, which contains the disconnect notice dispute language providing sufficient notice for due process purposes, such notice advises only that payment in the amount of $79.13 was required by January 10, 2005 to avoid termination of service on January 11, 2005. Bensink Affidavit Exh. C. Thus, such disconnect notice also failed to properly notice Plaintiffs of the possible disconnection of municipal utility service based on the continued nonpayment of the 235 Fluvanna account. Nevertheless, the disconnect notice advising that payment in the amount of $4,915.84 must be remitted by March 9, 2005, or the municipal utility service would be disconnected at 15 Cross Street and containing the disconnect notice dispute language sufficiently comported with due process requirements, such that Defendants' disconnection of service to 15 Cross

Street was not in violation of the Fourteenth Amendment's due process requirement. *Memphis Light, Gas & Water Div.,* 436 U.S. at 14, 98 S.Ct. 1554.

Summary judgment should therefore be GRANTED in favor of Plaintiffs insofar as Defendants terminated municipal utility service to 19 Cross Street at any time, and to 15 Cross Street between January 11, 2005 and March 10, 2005. Otherwise, summary judgment should be GRANTED in favor of Defendants as to the disconnection of municipal utility service at 15 Cross Street after March 10, 2005.

### C. Equal Protection

Plaintiffs Ludwig, Kathleen Ludwig and Ludwig Realty ("the Ludwig Plaintiffs") allege a denial of equal protection under the Fourteenth Amendment insofar as Defendants' actions in disconnecting the Ludwig Plaintiffs' municipal utility services were based on Defendants' perception that such Plaintiffs are political opponents in the City's administration, based on Ludwig's prior participation in *Real Estate Investors.* Complaint ¶¶ 58–59. As such, the Ludwig Plaintiffs maintain that they were treated by Defendants "in a manner different than the public at large or others who are similarly situated." *Id.* ¶ 60. Defendants contend in support of summary judgment that Plaintiffs failed to adduce any evidence establishing the claimed differential treatment. Defendants' Response Memorandum at 6. Plaintiffs' respond that insofar as Defendants' conduct in terminating municipal utility service at 15 and 19 Cross Street was motivated by a desire to retaliate against the Ludwig Plaintiffs because of Ludwig's participation in *Real Estate Investors,* such conduct was also a denial of equal protection. Plaintiffs' Memorandum 16–17. Defendants respond that Plaintiffs have failed to produce any evidence supporting Plaintiffs' equal

protection claim. Defendants' Response at 5–6. Plaintiffs argue in further support of the equal protection claim that Defendants have failed to identify any other situation in which a delinquent utility account in one spouse's name was used to justify the disconnection of utility service in the other spouse's name. Plaintiffs' Reply Memorandum at 11. Thus, Plaintiffs cannot establish other recipients of BPU's municipal utility service were differently treated compared to Plaintiffs' treatment by the BPU.

■■■■■ "The Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Incorporated Village of Mineola,* 273 F.3d 494, 499 (2nd Cir.2001) (citing *Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) ("The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike.") (internal quotation marks omitted)). To establish an equal protection violation under § 1983 based on selective treatment, a plaintiff must demonstrate that the person was selectively treated as compared to others similarly situated, and that " 'such selective treatment was based on impermissible considerations such as race, religion, [or] intent to inhibit or punish the exercise of constitutional rights....' " *Bizzarro v. Miranda,* 394 F.3d 82, 86 (2d Cir.2005) (quoting *LeClair v. Saunders,* 627 F.2d 606, 609–10 (2d Cir.1980)). As such, Ludwig's prior participation in as a plaintiff in Real Estate Investors against the City constitutes an impermissible consideration under the Fourteenth Amendment on which to base selective treatment.

■■■■ Nevertheless, in the instant case, the record is completely devoid of any evidence suggesting that any other BPU customer was allowed to continue receiving municipal utility service while another account remained unpaid.[12] Further, although Plaintiffs maintain that Defendants have failed to identify any other situation in which a delinquent utility account in one spouse's name was used to justify the disconnection of utility service in the other spouse's name, Plaintiffs' Reply Memorandum at 11, the burden is on Plaintiffs to establish the alleged selective treatment. *LeClair,* 627 F.2d at 610 (placing burden on plaintiff to present evidence establishing selective treatment as compared to others similarly situated).

Accordingly, summary judgment on this cause of action should be GRANTED in favor of Defendants.

## D. Retaliation

Plaintiffs claim that Defendants retaliated against Plaintiffs for Ludwig's exercising his First Amendment Rights by participating as a plaintiff in *Real Estate Investors,* Complaint ¶ 52. According to Plaintiffs, Defendants also retaliated against Kathleen Ludwig based on her marital association with Ludwig, and Ludwig Realty based on its name similarity. *Id.* ¶ 53. Finally, Plaintiffs allege Defendant retaliated against Schnelzer who publicly criticized Defendants for retaliating against the Ludwig Plaintiffs for exercising their First Amendment rights

---

12. Despite the recommendation that the initial disconnection of municipal utility service at 15 and 19 Cross Street failed to comport with due process requirements, such lack of notice is irrelevant to the Equal Protection claim which is limited to an assertion that the termination of municipal utility service was intended as retaliation against the Ludwig Plaintiffs for Ludwig's participation in *Real Estate Investors.*

based on their connection to *Real Estate Investors*.[13] *Id.* ¶ 67. Defendants maintain Plaintiffs have presented no evidence in support of this claim. Defendants' Memorandum at 6. In response, Plaintiffs contend that Defendants' terminated the Ludwig Realty municipal utility service to retaliate based on Ludwig's success in Realty Investors Association, and that such actions by Defendants have deprived Plaintiffs of their First Amendment rights of association and to petition the government for redress of grievances. Plaintiffs' Memorandum at 16. In further support of summary judgment, Defendants argue that Plaintiffs have not produced any evidence in support of such claim. Defendants' Reply Memorandum at 5. Plaintiffs reply that the fact that Defendants targeted the properties out of which Kathleen Ludwig operated Ludwig Realty, rather than Ludwig's residence or other rental property, establishes Defendants' intention to "cripple" Kathleen Ludwig's business so as to retaliate against Plaintiffs. Plaintiff's Reply Memorandum at 10.

 To establish a *prima facie* case of First Amendment retaliation, a plaintiff must establish that (1) the speech or conduct at issue was protected; (2) the defendant took adverse action against the plaintiff, and (3) a causal connection between the protected speech or conduct and the adverse action. *Scott v. Coughlin,* 344 F.3d 282, 287 (2d Cir.2003) (citing cases). A causal connection may be established indirectly by showing that the protected activity was followed closely in time by the adverse action. *See Dawes v. Walker,* 239 F.3d 489, (2d Cir.2001) (plaintiff inmate's failure to plead time frame between inmate's successful appeal of disciplinary order made by correctional officer and correctional officer's alleged attempt to coerce another inmate to assault plaintiff precluded inference of causal connection necessary to establish First Amendment retaliation claim). Where the plaintiff establishes a *prima facie* case, the defendant may nevertheless be entitled to summary judgment upon demonstrating "dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." *Scott,* 344 F.3d at 287–88 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). The initial burden is on the plaintiff to establish "an improper motive played a substantial part in defendant's action. The burden then shifts to defendant to show it would have taken exactly the same action absent the improper motive." *Id.*

 Here, Plaintiffs have established a *prima facie* case of retaliation insofar as Ludwig's participation in *Real Estate Investors,* Kathleen Ludwig's and Ludwig Realty's association with Ludwig, and Schnelzer statements criticizing Defendants were all protected activities under the First Amendment. Defendants do not contend otherwise. Nor do the parties dispute that the termination of Plaintiffs' municipal utility service was an adverse action. Furthermore, Plaintiffs have demonstrated a possible improper motive for the adverse action given that Defendants do not dispute that Ludwig was a success-

---

**13.** Insofar as Schnelzer asserts that Defendants relied on an incorrect building code to justify Defendants' request that Schnelzer remedy the illegal cross-connection of electrical service between Schnelzer's leased space and the space occupied by Ludwig Realty at 15 Cross Street, Schnelzer Affidavit ¶¶ 23–27, the record indicates, Wright Affidavit ¶ 10; Bensink Affidavit ¶ 19, and Schnelzer does not deny, that Schnelzer's electrical service was not terminated for such violation. As such, it is irrelevant whether Defendants relied on the correct building code.

ful plaintiff against the BPU in *Real Estate Investors* less than four months prior to the termination of municipal utility service to 15 and 19 Cross Street, that Kathleen Ludwig and Ludwig Realty are associated with Ludwig, and Schnelzer voiced his criticism of Defendants. As such, the burden shifts to Defendants to demonstrate that despite any such improper motive, Defendants would have pursued the same adverse action against Plaintiffs.

■ As discussed in connection with Plaintiffs' due process claims, Discussion, *supra,* at 20–27, Defendants have established that the termination of Plaintiffs' municipal utility service at 15 and 19 Cross Street was supported by the non-payment of the balance transferred from the 235 Fluvanna account. The lack of proper notice when Plaintiffs' municipal utility service was initially disconnected in no way undermines the fact that Defendants were authorized to disconnect such service based on the unpaid balance transferred from the 235 Fluvanna account. How such a routine attempt to collect an overdue account implies an intent to infringe Plaintiffs' First Amendment rights is not explained by Plaintiffs.

Further, insofar as Plaintiffs maintain that Defendants' failure to terminate municipal utility service to Ludwig's residence or other rental properties establishes Defendants' intended to target Ludwig Realty so as to "cripple" such business, Plaintiff's Reply Memorandum at 10, Plaintiffs have nor provided any evidence demonstrating that Ludwig maintained any other utility service accounts with the BPU. In fact, nothing in the record establishes the location of Ludwig's residence or any other rental properties owned by Ludwig. Moreover, that Defendants chose to disconnect municipal utility service necessary for Plaintiffs to operate their businesses, instead of also disconnecting municipal utility service to Ludwig's residence and other rental properties, rather than establishing an improper motive, reasonably suggests that Defendants did not pursue their right to collect the sums owed by Ludwig against Plaintiffs in connection with the unpaid 235 Fluvanna account as broadly as Defendants legally might have but, rather, merely demonstrates commendable administrative forbearance, not bureaucratic malignity. No reasonable juror could, on this record, find otherwise.

Defendants have thus established that the adverse action of which Plaintiffs complain would have occurred regardless of any improper motive. Summary judgment on this claim should therefore be GRANTED in favor of Defendants.

### *CONCLUSION*

Based on the foregoing, Defendants' motion for summary judgment (Doc. No. 10), should be GRANTED in part and DENIED in part; Plaintiffs' motion for summary judgment (Doc. No. 13), should be GRANTED in part and DENIED in part.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of*

*Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiffs and the Defendants.

SO ORDERED.